[No. 11254. Department One. July 26, 1913.]

## WILLIAM HAGEN et al., *Respondents*, v. BOLCOM MILLS, *Appellant*.[1]

MUNICIPAL CORPORATIONS — STREETS—VACATION — EFFECT—NOTICE. An order of vacation of streets being a public record, is in legal effect an amendment of the plat and subsequent purchasers take with notice thereof.

SAME—VACATION—TITLE. Under Rem. & Bal. Code, § 7846, providing that on the vacation of a street, the same shall be attached to the lots bordering thereon, and that title shall vest in the persons owning the property on each side thereof in equal parts, title to a vacated street passes in fee simple to one owning all the land on both sides of the street.

SAME—TITLE TO VACATED STREETS—STATUS AS DISTINCT TRACT— DEED OF ABUTTING LOTS—EFFECT. Where, by the vacation of a street, the owner of all the land on both sides of the street acquired the title to the street, and conveyed the whole property describing the street as a distinct parcel, its future status as such is fixed, and the conveyance is notice to all subsequent grantees in the chain of title that the street is to be treated as a separate tract which does not pass by a subsequent conveyance of abutting lots; since the owner could fix its status and convey it apart from the lots, land is not appurtenant to land, and subsequent purchasers do not buy with reference to a platted street where there is none at the time of their purchase.

APPEAL—REVIEW—RECORD — EXCEPTIONS — DECREE WITHOUT FINDINGS. In an equity case, in which no findings are made, a general exception to the decree is sufficient to obtain a review of the evidence, under Rem. & Bal. Code, § 382, providing that it shall not be necessary to take an exception to any ruling or decision which is embodied in a written judgment, order or journal entry, except findings of fact etc.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered October 19, 1912, upon findings in favor of the plaintiff, in an action to quiet title. Reversed.

*Myers & Johnstone*, for appellant.

*Carkeek, McDonald & Kapp* and *William S. Bell*, for respondents.

[1]Reported in 133 Pac. 1000; 134 Pac. 1051.

CHADWICK, J.—The parties to this action are contending over the ownership of a vacated street lying between lot 3, in block 162 and block 165, in Gilman Park addition to the city of Seattle. That our statement of the facts may be the better understood, we have caused a plat to be reproduced for present reference.

Blocks 162 and 165 were acquired by the Seattle Iron & Steel Manufacturing Company, a corporation, on the 27th day of August, 1889.

On the 7th day of October, 1889, the county commissioners of King county granted the petition of the Seattle Iron & Steel Manufacturing Company, and by an order then entered, vacated all of the alleys in certain blocks owned by the steel company, including blocks 162 and 165, and also ordered "that so much of 'E' street in Gilman Park as lies between said blocks 162 and 165, that is to say, so much of 'E' street as lies between the west boundary line of First avenue east and the east boundary of Railroad avenue in said Gilman Park be, and the same is hereby vacated, and hereafter ceases to be a public street."

The law governing vacations of streets at the time this order was entered, was the original act passed in 1858, with possibly some minor amendments, which has been carried into Rem. & Bal. Code as § 7846 (P. C. 77 § 1013).

On February 1, 1900, the steel company conveyed to Lester Turner "blocks . . . 162, 165 . . . and that portion of what was formerly platted as public streets lying between said blocks as follows, to wit: . . . of 'E' street between blocks 162 and 165 . . . " On June 13, 1902, the steel company quitclaimed to Turner "the land platted as alleyways through blocks . . . 162, 165 . . . " On February 25, 1905, Lester Turner conveyed lots two and three, block 162, to C. E. Lawson. Lawson conveyed to one Dahlberg. In these conveyances, the property is described as lots two and three, in block 162. No mention is made of the vacated street.

On July 3, 1905, Turner conveyed to defendants' predecessor all of block 165, and "the alleyway running through said block, heretofore platted, but now vacated." On December 24, 1906, Turner deeded to defendant certain lots in block 162, "and that portion of 'E' street (vacated) lying between blocks 162 and 165," and on November 20, 1908, by like conveyance, the "vacated alley in block 162." On December 22, 1911, Dahlberg conveyed lots two and three in block 162 to Hagen, the plaintiff. On March 11, 1912, Turner gave Hagen an option to purchase "that portion of 'E' street lying south of lot three (3), block 162 . . . and contiguous to said lot three (3)."

Defendant has used, and has put some improvements in the way of a lumber shed on, the disputed property. Plaintiff and his predecessors have, since 1905, paid taxes on lots 2 and 3 "with portion of vacated alley and 'E' street;" and defendant has paid taxes on block 165 and "vacated alley and vacated 'E' street adjoining."

Plaintiff prayed for a recovery of the possession of the disputed land; for the value of the rents and profits for the

time the property has been occupied by the defendant; and for general relief. From a decree quieting title in plaintiff, defendant has appealed.

Respondent relies on the statutes, Rem. & Bal. Code, § 7842 (P. C. 77 § 1185), and upon certain decisions of this court, to sustain the decree. The statute, which is the act of 1901, is as follows:

"When any street, alley or public way in any incorporated city or town in this state has heretofore been or may hereafter be vacated by the council or legislative body of said city or town, the property within the limits of any such street, alley or public way so vacated shall belong to the abutting property owners, one-half to each, unless within six months after the taking effect of this act, any person or corporation, who may feel himself or itself aggrieved by such a division, may commence an action in the proper courts of this state to determine the title to any such street, alley or public way so vacated." Laws 1901, p. 176, § 3.

And the decisions are: *Norton v. Gross*, 52 Wash. 341, 100 Pac. 734; *Rowe v. James*, 71 Wash. 267, 128 Pac. 539; *Burmeister v. Howard*, 1 Wash. Ter. 207; and *Milton v. Crawford*, 65 Wash. 145, 118 Pac. 32. These cases recognize the general rule that, upon the vacation of a street or alley, the land thus relieved of the public easement therein becomes attached to, and passed by deed under a description of the abutting property. We shall refer to them later in this opinion. The general rule is qualified when the circumstances of the particular case demand it; as, for instance, if the conduct of the parties and their intent as manifested in the deeds or other instruments occurring in the chain of title show that the property has not been treated as a part of the abutting lots.

The reversion in the present case occurred under § 7846 of the code. This section, and the others attending it, were held to be repealed by the act of 1901, which we have quoted above, in *Rowe v. James, supra*, but that act expressly pro-

vided that "No vested rights shall be affected by the provisions of this act." Laws 1901, p. 176, § 4.

Rem. & Bal. Code, § 7846 (P. C. 77 § 1013), is as follows:

"The part so vacated, if it be a lot or lots, shall vest in the rightful owner, who may have the title thereof according to law; and if the same be a street or alley, the same shall be attached to the lots or ground bordering on such street or alley; and all right or title thereto shall vest in the person or persons owning the property on each side thereof, in equal proportions: *Provided,* The lots or grounds so bordering on such street or alley have been sold by the original owner or owners of the soil; if, however, said original owner or owners possess such title to the lots or ground bordering said street or alley on one side only, the title to the same shall vest in the said owner or owners if the said court shall judge the same to be just and proper."

The order of vacation of the streets in Gilman Park, being a public record, was in legal effect an amendment of the plat, and all who bought thereafter took with notice of the change. All of the land on both sides of the street being in one ownership, the title to the vacated street passed in fee simple.

"A conveyance according to a plat is a conveyance by recorded metes and bounds, except where the lots front on a street.   .   .   .   The metes and bounds on the plat, it is conceded, would have been sufficient if the lot had been in the center, instead of the corner of the block.   That was the legal situation when the street was vacated." *White v. Jefferson,* 110 Minn. 276, 124 N. W. 373, 125 N. W. 262, 32 L. R. A. (N. S.) 778.

The reason supporting title to vacated streets by reversion to abutting owners is, that the law will presume that they have paid an enhanced value therefor in consequence of the prospective use of the street.

"The proprietor of premises platted as a town site, by reason of dedicating a part for use as streets, enhances the value of the lots to which access may be had by means of such streets.   His grantees pay this enhanced value, and the proprietor thus receives a consideration, not only for the pre-

cise amount of land described in each lot, but, also, that embraced in the streets upon which the lots abut; and he who has already been once paid for his land cannot, in equity, be heard to assert title thereto as against one who has paid him the consideration therefor." *Olin v. Denver & R. G. R. Co.*, 25 Colo. 177, 53 Pac. 454.

"Easements of this character may cease to exist, like all other burdens upon land, and when they do the land is freed from the encumbrance as completely as though it had never existed, and the owner of the soil has an absolute title to the same. Angell on Highways, Sec. 326, says: 'From the principles already declared it necessarily results that when the public easement is relinquished or vacated, the owner of the soil is restored to his original dominion over the same.' " *Benham v. Potter*, 52 Conn. 248.

At the time the street was vacated, the steel company was the sole owner of blocks 162 and 165, and became the owner of the intervening vacated space called "E" street. Unquestionably the common owner could have conveyed that space without reference to the adjoining lots, just as an abutting owner could convey the reverted one-half of the street apart from the lot. To hold otherwise would be to hold that a reverted street could never be conveyed except as a part of an abutting lot. Instead of conveying the vacated street alone, the steel company conveyed the whole property, not by lots and blocks, but with an apt description of the vacated property, thus injecting into the chain of title, common to both parties to this suit, a notice that the owner treated the vacated property as a separate quantity of land. Turner, by like conveyance, deeded the vacated land to the defendant. His deed to plaintiff purported to convey lots two and three in block 162. It cannot be held that plaintiff bought with reference to a platted street because there was no such street at the time he or any of his immediate grantors bought the property.

*White v. Jefferson*, to which we have referred, is a case in many respects like the one at bar. There had been a vacation of a street before the lots, which it was insisted carried the

vacated street, had been sold. Mr. Justice Jaggard, after stating the general rule of reversion, said:

"It is true that in cases presenting the question whether a grant according to a recorded plat of premises abutting on a street conveyed only the land described in the plat by metes and bounds, or also the fee to the middle of the street subject to easement of public use, the opinions of the courts have often contained utterances to the effect that the fee title to the middle of the street was a necessary or integral part of the lot indicated by the plat; that interest was part and parcel of the lot conveyed; that the center line of the street is a boundary line of abutting lots; that the grantor is estopped from denying a conveyance of the fee subject to the easement, and the like. Such general statements must, of course, be limited to the particular facts involved, and are not at all inconsistent with the application of another rule to a substantially different state of facts. Where the street had been vacated before the granting, are the facts substantially different? The rule in such a case can be determined only by a consideration of relevant principles. . . .

"The owner of the land platted usually becomes entirely disassociated with the title to the land sold and has neither a proximate interest in nor a practical use for the qualified fee in the street. The interest of the vendee therein is immediate. It has direct and substantial value to him. Indeed, as Cole, J., said in *Kimball v. City*, 4 Wis. 321, 331, the lots would be 'comparatively useless' without the implication of conveyance to the middle of the street. He is logically entitled to improve the property as he chooses. It conduces to the best use of the premises to allow him to do so in reliance on access to the street on the ground itself and for light and air above. So long as the land is used as a street these rights would be protected, irrespective of who owned the fee. But upon vacation of the street these rights would be legally destroyed unless the vendee had the fee. It is much more reasonable to vest that fee in him than in the usually remote party who originally platted the land. To allow the vendor to retain the fee would be a serious embarrassment to alienation and improvement of property which it consists with public policy to favor. . . .

"Where, however, the street has been vacated while the original proprietor owns the lots in question, the situation

is substantially different. On vacation of a street in a case like the one at bar, he owns lots 23 and 24 and the space between in fee simple. He can transfer the whole tract, or any part of it, or transfer lot 23 to any person, and lot 24 to another person, and the space between the two to a third person. It is immaterial in what order of time such transfers were made. If the strip was granted before the lots, the intention would be certain; if afterwards, equally clear. What had been a street would be mere land. It would be taxable as land and so descend. Its transfer would be subject to the appropriate section of the statute of frauds. That it was not numbered nor properly named on the plat would be wholly insignificant. The case would be the same as if no street had ever existed, and, instead of being designated as 'street,' the tract had been marked 'sand hole,' or 'mound,' or any other name, or had had no name. The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement. There is neither mystery nor magic in the word 'street.' The easement of use is the significant fact.

"When the easement ceases, there is no occasion nor justification for any imputation of intention. The parties would contract with reference to a record showing that no street existed, where the vacation proceedings are required to be recorded. Neither alienation nor improvement would be jeopardized by selling lots without the strip; merely less land would be sold to any one person. What had been a possible creator of local improvement assessments would become a possible subject of such public charge. When the reason for the rule ceases, the rule itself should cease. The courts do not indulge in unnecessary, artificial assumptions, nor make new contracts for parties who have definitely agreed upon its terms. This they would do if in such cases they should construe a deed to pass title to a parcel of land distinct and different from what that contract accurately described.

"In the instant case, before the transfer to either plaintiff or defendants, there were on record in the office of the register of deeds two recorded plats of this addition, namely, the plat originally filed and the plat required to be there filed, together with a transcript of the resolution canceling and vacating the street, which was required by section 117, pp. 24, 25 (3d ed.) charter of St. Paul, as a necessary condi-

tion to the validity of the ordinance. And it is here stipulated that the ordinance was valid. The defendants, therefore, had notice that there was no La Salle street, and contracted with reference to a record showing that the strip did not adjoin a street."

The learned justice then reviews the authorities, from which he extracted the governing principle in this class of cases, "That land is never appurtenant to land;" or, as we may put it, a fee may carry an easement or a lesser estate as an incident or an accretion, but the conveyance of the fee simple title to one piece of land will not carry as an incident or an accretion a fee of equal or greater degree and quality.

*Brown v. Taber*, 103 Iowa 1, 72 N. W. 416, is a case in point. The dedication of streets under the Iowa statute vested the fee in the public, and had the dedication in that case been accepted, the general rule would have been applied. The case involved the title to a vacated street, and the court found that the dedication had not been accepted, and applied the principle to which we have adverted. There, as here, the original owner had made a conveyance to a first vendee of certain lots, and a later conveyance to a second vendee of lots including the vacated street. The court held that a conveyance of the lots did not include the vacated street, saying:

"The only effect of vacating [the street] was to withdraw it from the public use. In the words of Lowe, C. J., in *Milburn v. City of Cedar Rapids*, 12 Iowa, 246: The lots are 'designated by numbers, and it is simply by these numbers that they are conveyed, as they are known to represent the particular lot, with its specific boundary as represented on the map. Under such circumstances there is no room to indulge in the presumption that the purchaser takes any more land than is contained within the defined lines of the lot.' Referring to the lots by number in the deed, had the effect identical with describing them by metes and bounds as delineated on the plat. Their boundary lines were those of the vacated street, and the deed conveyed to King only the land included within such lines. See *Chicago Lumber Co. v. Des Moines Driving Park*, 97 Iowa, 25; *Burbach v. Schweinler*, 56 Wis.

386 (14 N. W. Rep. 449). As the vacated street was a distinct parcel of land, it seems hardly necessary to say that it did not pass as incident or appurtenant to the lots. *Jackson v. Hathaway*, 8 Am. Dec. 263; *Mendel v. Whiting*, (Ill. Sup.) 31 N. E. Rep. 431; *Harris v. Elliott*, 10 Pet. 25; *O'Linda v. Lothrop*, 21 Pick. 296; *Ammindown v. Bank*, 8 Allen, 285."

In *Overland Machinery Co. v. Alpenfels*, 30 Colo. 163, 69 Pac. 574, the court said:

"Much argument, pro and con, is devoted to the proposition that a deed describing property by lot and block number operates as a conveyance of contiguous property which was at one time, but is no longer, included within the limits of a public street. . . . That the original owner who has the fee both in the streets and lots abutting thereon has the right to retain his estate in the former when he sells the latter, that he may separate the two estates or titles, and treat them as distinct and separate tracts or parcels, is too clear for argument. *Jackson v. Hathaway*, 15 Johnson 447. . . . Let us then carefully look to the language of the description in the deed of March 17, 1871, from Ebert to Case. Ebert then owned all of block 12 and all of Depot street opposite the same. The deed reads: 'All block numbered twelve (12) in Case and Ebert's Addition to the City of Denver; also doth quitclaim all title in being and reversion, to the land now occupied by Depot street . . . lying contiguous to and adjoining said block.' Clearly, then Ebert treated block 12 and Depot street as separate and distinct tracts and by the conveyance of block 12 did not intend to extend the grant so as to include any part of the adjacent street. For, after conveying the block by reference to its number as shown on the recorded plat, he quitclaims all title to the 'land now occupied by Depot street . . . lying contiguous to and adjoining said block.' We must not disregard this additional description as surplusage; on the contrary, we are bound to assume, if we can, that the parties meant something by it. If, as contended by the plaintiffs, by this deed Ebert intended to convey to Case the portion of Depot street contiguous to block 12 as appurtenant to, or as part of, that block, he would have stopped after describing block 12; but by the use of the word 'also,' which, in a case of this sort, means something in addition to that previously described,

he proceeds to include in the grant something not thereto-fore embraced in a previous description. And when he adds Depot street to the grant he says, in effect, that he intends to pass a parcel of land distinct and different from what he has already described. Devlin on Deeds, § 864; *Panton v. Tefft*, 22 Ills. 366, 375-6. Not only Ebert, as grantor, was bound by this description; so, also, was Case, as grantee. Both of them, the grantor in conveying, and the grantee in accepting, the deed, must have intended that the conveyance of block 12 by its appropriate number with reference to the plat extended only to the nearest side, and not to the center, of Depot street, and by describing with particularity as one of the parcels of the grant that portion of Depot street lying adjacent to block 12 the parties intended to include such portion as a separate and distinct parcel. It is this deed which, in our judgment, clearly shows the intention of the parties to restrict block 12 to the southeasterly side of Depot street.   .   .   .

"Indeed, when once there has been a conveyance excluding a highway from the grant, as was done by Ebert in his deed to Case, neither Case nor any subsequent grantee can include it, for he would be conveying something as a part of the specific thing granted which was distinct from it. 4 Enc. of Law (2d ed.), 817.

"Case, then, in 1878, being the owner of all block 12 and also the title of Depot street adjacent thereto certainly had the right to continue as separate the two titles and two tracts of ground which he held, just as Ebert did when title passed from him to Case. The parties concerned, therefore, having severed the two estates, having by their deed in effect mani-fested their intention to vacate Depot street and having lim-ited block 12 to the southeasterly side of that street, it was beyond the power of their subsequent grantees to reunite them in one tract, or to convey the street as appurtenant to the lots in the block, without the consent of all parties con-cerned."

In *Plumer v. Johnston*, 63 Mich. 165, 29 N. W. 687, the court said:

"The doctrine is well established that the grantee of a lot bounded upon a street or other highway takes to the center of such street, subject only to the public easement, unless some-

thing appears upon the plat, or in the terms of the conveyance, excluding the title from passing under a boundary so described.   But this doctrine is limited, and is applied to actual highways, and not to mere paper highways.   *Hopkinson v. McKnight*, 31 N. J. L. 422."

In *Sanchez v. Grace Methodist Episcopal Church*, 114 Cal. 295, 46 Pac. 2, the court raised the question relied on by respondent, saying:

"A more serious question is whether the land in Messer's lane to the middle of it did not become, when the lane was vacated, by a sort of accretion, parcel of the abutting lots so as to pass with them by the deed to Leonis without further designation.   (See *Challis v. Depot etc. Co.*, 45 Kan. 398; *Atchison etc R. R. Co. v. Patch*, 28 Kan, 470—cases turning upon a peculiar statute.)   We think no such rule can obtain in this case; the conveyance of land bounded by a highway is presumed to carry title to the median line of the way, but there is no reason in a like presumption to include land which has formed, but forms no longer, part of a highway; in 1875, when the deed was made to Leonis, the soil of the former lane, together with the strip off the Mott & Johnson tract, formed a body of land some seventy feet in width lying between lots 23, 24 and First street, and wholly free from the legal incidents which pertain to the soil of a highway; there is, therefore, no more reason to say that any part thereof passed under the designation of those lots in the deed than for extending the scope of that description to adjacent land—if such there had been—which never was impressed with the highway use; more especially since neither party claims that plaintiff owned the fee in any part of said lane before its vacation as a highway.   (*Harris v. Elliott*, 10 Pet. 25, 54.)"

Nothing will be gained by pursuing the authorities.   Under a similar state of facts, it is uniformly held that deeds are controlled by the intent of the parties, as expressed therein and that subsequent grantees are bound by the patent intent of the common grantor.

We find that "E" street, by the process of vacation, became a separate tract, and the property of the owner of the blocks 162 and 165. [Rem. & Bal. Code, § 7846 (P. C. 77

§ 1013)]; that its future status depended upon the attitude of its then owner; that it was conveyed as a distinct parcel; and that such conveyance was notice to all subsequent grantees in the chain of title.

"The original owner who lays out an addition to a city and has the fee both in the streets and the abutting lots, may separate the two estates or titles and treat them as distinct and separate tracts or parcels. He may sell the lots and retain his estate in the adjacent street." Syllabus to *Overland Machinery Co. v. Alpenfels*, 30 Colo. 163, 69 Pac. 574.

See, also, 4 Am. & Eng. Ency. Law 817.

Nor has this court held to the contrary of the doctrine here announced. The exact question has never been before the court. The case of *Norton v. Gross, supra,* the case most relied on, was correctly decided, and rests upon two principles: the general rule of reversion and estoppel. The question of a sole ownership at the time of the vacation was not involved. So, too, in the case of *Rowe v. James.* The street vacated abutted on lots owned by different parties. The lots had long since passed out of the common grantor. The vacated street reverted under § 7842 of the code. In *Burmeister v. Howard,* the vacation was granted upon the petition of abutting lot owners, and the general rule of reversion was recognized, subject, however, to an estoppel. There is nothing in the case of *Milton v. Crawford* that pertains in any way to the present issue.

Nor do we understand the payment of the taxes by the plaintiffs and their predecessors in interest on one-half of the vacated street will defeat the true title. Payment of taxes is proper evidence in support of a claim of title. 1 Ency. of Law 680. It is not conclusive unless made so by the statute. Our statute, § 786 (P. C. 81 § 1373), provides that payment of taxes for seven years under color of title will support a claim of title. There is no color of title in plaintiffs to the land in controversy, and in the light of the record and

the law, as we have found it to be, no right has ripened in the plaintiffs by reason thereof.

This conclusion makes it unnecessary to inquire whether plaintiffs are estopped by their conduct to claim title to vacated "E" street.

Reversed and remanded with instructions to dismiss.

MOUNT, PARKER, and GOSE, JJ., concur.

## ON PETITION FOR REHEARING.

### [Decided September 13, 1913.]

PER CURIAM.—A petition for rehearing has been filed in which respondents complain that this court has overlooked, and by its omission has overruled, the many decisions of this court holding that, where no exceptions are taken to the findings of fact, the court will not review the case except to inquire whether the findings sustain the decree or judgment. Counsel say:

"We cited repeated rulings of this court to the effect that the failure to take exceptions to the findings of fact is ground for striking the statement of facts and for preventing the court from considering such a statement except as to those portions which have to do solely with the ruling of the court in regard to evidence. If this rule of law has not been overruled then this case at bar would have to be affirmed. If this court, on the other hand, intends to overrule all of these cases which we cited, then it seems to respondents that the opinion should so state."

In the interest of brevity, we have frequently omitted a discussion of objections that do not touch the merits of a case. We had not supposed that the objection was seriously urged until the petition for rehearing came in. No findings of fact were made by the court. A general exception was taken to the decree, and it was allowed by the court. Counsel assume that appellant should have treated the decree as findings of fact, and entered specific exceptions to the several matters covered by it. The statute puts no such burden upon an ap-

pellant, nor has this court·ever held that such exceptions to a decree are required. The statute provides:

"It shall not be necessary or proper to take or enter an exception to any ruling or decision mentioned in the last section which is embodied in a written judgment, order or journal entry in the cause. But this section shall not apply to the report of a referee or commissioner, or to findings of fact or conclusions of law in a report or decision of a referee or commissioner, or in a decision of a court or judge upon a cause or part of a cause, either legal or equitable, tried without a jury." Rem. & Bal. Code, § 382 (P. C. 81 § 671).

We have held that, if findings are made in equity cases, exceptions must be taken as in actions at law; such exceptions are required only in cases "where findings are made." *McAllister v. McAllister*, 28 Wash. 613, 69 Pac. 119; *Berens v. Cox*, 70 Wash. 627, 127 Pac. 189; *McIntyre v. Johnson*, 63 Wash. 323, 115 Pac. 509; *Yakima Grocery Co. v. Benoit*, 56 Wash. 208, 105 Pac. 476; *Murray v. Shoudy*, 13 Wash. 33, 42 Pac. 631. In the *McAllister* case, the court said:

"The respondent next insists that no exceptions were taken to the findings of fact made by the lower court, and that the cause cannot be reviewed in this court for that reason. There were no formal findings of fact or conclusions of law made by the trial court. The records show that at the conclusion of the evidence and the arguments of counsel the court ordered the case dismissed, 'as a case for divorce on the grounds of cruelty had not been made out.' To this the appellant duly excepted. Afterwards a judgment of dismissal was entered, in which it is recited that the court 'finds that the plaintiff has not sustained the allegations of her complaint,' which was also duly excepted to by the appellant. The respondent does not point out what further exception he conceives ought to have been taken, nor does he say why he deems the exceptions taken insufficient. In our opinion, the exceptions are sufficient. They clearly pointed out to the trial court the appellant's claim of errors in its rulings and decisions, and this is all that is required by the statute. Bal. Code, §§ 5050, 6520."

It is also complained that we have not held that appellant is not entitled to a part of lot 3, now occupied by it, and

which is admittedly owned by respondents. Appellant has not claimed any part of respondents' property and the issues called for no ruling such as is now invited. Upon the record before us, the parties are entitled to claim within the calls of their deeds and not beyond them.

We are also asked to so modify our opinion as to permit a recovery of taxes which have been paid in good faith and inured to the benefit of appellant. If this item cannot be amicably adjusted, as it should be, our decision will be without prejudice to an action to preserve respondents' legal rights, whatever they may be.

Rehearing denied.