[No. 6319–4–III.   Division Three.   May 7, 1985.]

ADDIANNA F. McCONIGA, ET AL, *Respondents,* v.
JOHN W. RICHES, ET AL, *Defendants,* ROSS
LAY, ET AL, *Appellants.*

*Ross Lay* and *Jennifer Lay,* pro se.

*Jan C. Kielpinski,* for respondents.

MUNSON, J.—Ross and Jennifer Lay appeal an order on summary judgment providing that only respondents Addianna McConiga, Charles and Betty King, Steven and Christina Bradley, Albert and Linda Bailey, Theodore Wilkins, Ray and Sherry Carr and David Neikirk have the right to use Highland Square Road. The Lays contend the court erred when it: (1) did not decide who had the right to use the east leg of the road; (2) held there was no implied dedication of the road; (3) determined respondents hold fee title in the road; and (4) determined the easement was exclusive. We affirm.

John and Leona Riches, developers, filed the Riches Addition plat March 6, 1978. This subdivision consists of nine lots serviced by a U–shaped road called Highland Square.

The plat does not expressly dedicate the road to public use; it contains the following statement:

> The purchaser and/or owner of this parcel understands and agrees that private road construction, maintenance, and snow removal shall be the obligation of the owner or homeowners association and that Klickitat County is in no way obligated until the road is brought up to the standard and accepted by the county.

On April 17, 1978, the Riches, as "grantors", recorded with the Klickitat County Auditor a "Deed of Covenant, Restrictions and Limitations". This document stated that the real property subject to the deed was the following:

> Lots 1 through 9 inclusive, of Riches Addition, according to plat thereof duly recorded in Volume 4 of Plats, page 59, records of said county and state. All roadways as set forth in said plat.

The document also created the Riches Addition Homeowners Association, the purpose of which was to "provide a practicable, economical, and fair method of maintaining the roadways serving the afore described [sic] lots."

Another provision of the document stated:

ARTICLE V

Section 1. *Road Easement.* Each owner has, at the time of purchase of his lot or lots, granted right of access by a private road easement to all other members of the Association for such members['] full use and enjoyment in connection with the use of the premises as residence dwellings over and across the roadways, as set forth in the plat above described.

On the same day the Riches recorded the deed, they conveyed lot 1 to respondents Charles and Betty King. On June 7, 1978, the Riches quitclaimed lots 2 through 9 to Riches, Inc., a Washington corporation.

Each of the conveying documents except those for lots 3, 4, and 8 describe the property conveyed as "Riches Addition to Lyle, as per plat recorded in Volume 4 of Plats, page 59, records of Klickitat County". The conveying documents for lots 3 and 4 describe the property as follows: "Riches Addition to Lyle, recorded in Volume 4 of Plats, page 59. Subject to easements and restrictions of record", and lot 8: "Riches Addition to Lyle, recorded in Volume 4 of Plats, page 59. . . . Subject to conditions and covenants of record."

On November 4, 1978, a "Right–of–Way Easement" to Riches, Inc., was executed by the owners of five of the nine lots. The owner of four of the lots was "Riches, Inc., John W. Riches". The owners of the fifth lot were respondents Ray and Sherry Carr. The easement purported to grant to Riches, Inc., "the right to use the East Leg of Highland Square for an access roadway to a potential development to be platted on the forty acres lying to the east of Riches Addition."

By August 1980, lots 2 through 9 were reconveyed to the remaining respondents. On November 30, 1981, Riches,

Inc., by quitclaim deed purported to convey to the Lays the following:

That portion of Riches Addition to Lyle per plat recorded in Volume 4 of Plats, page 59, records of Klickitat County, State of Washington known as Highland Square, a private road.
Subject to conditions and covenants of record.

The Lays' property is adjacent to and east of Riches Addition. When a dispute arose over the use of the road, the respondents filed a complaint for declaratory judgment regarding the rights and duties of all parties with respect to Highland Square. Respondents maintained that only the owners of lots 1 through 9 of Riches Addition had the right to use the road. The Lays, Riches and Riches, Inc., answered, claiming the Lays owned the road. Cross motions for summary judgment were filed.

At oral argument, the court was advised no controversy existed with respect to the east leg of the road. This is confirmed by a statement in the Lays' trial memorandum. With respect to the remainder of Highland Square, the court granted respondents' motion for summary judgment and declared that only respondents had the right to use the road. The Lays appeal pro se.

■ In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue of material fact exists, not to resolve any existing factual issue. *Thoma v. C.J. Montag & Sons, Inc.,* 54 Wn.2d 20, 337 P.2d 1052 (1959). The court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party; when so considered, if reasonable men might reach different conclusions, the motion should be denied. *Wood v. Seattle,* 57 Wn.2d 469, 358 P.2d 140 (1960).

The Lays first contend the court erred in not adjudicating the rights to the east leg of Highland Square Road because a controversy might arise in the future. As the respondents point out, an appellate court may refuse to review any claim of error which was not raised in the trial

court. RAP 2.5(a). Although not a part of the record, it appears the Lays' use of the east leg of Highland Square was assured through a separate chain of title from the Clarks, who are not parties to this litigation. In view of the stipulations made in oral argument and in the Lays' trial memorandum that any contentions regarding the east leg of the road were withdrawn, the trial court correctly did not adjudicate that issue.

Next, the Lays contend the court erred in declaring there was no implied dedication of the road. Dedications devote land to a public use and they may be classified as either statutory or common law. 26 C.J.S. *Dedication* § 1, at 398–99 (1956). This case does not present a statutory dedication; the requirements of Klickitat County Ordinance 18.08.070 are not met.[1] The plat of Riches Addition does not expressly dedicate the road to public use. While approval of filing is evidence of acceptance by the public, the statement on the plat warning that the county is "in no way obligated until the road is brought up to the standard and accepted by the county" negates any acceptance.

■ There are two essential elements to a valid common law dedication: (1) an intention on the part of the owner to devote his land, or an easement in it, to a public use, followed by some act or acts clearly and unmistakably evidencing such intention, and (2) an acceptance of the offer by the public. *Knudsen v. Patton,* 26 Wn. App. 134, 611 P.2d 1354, *review denied,* 94 Wn.2d 1008 (1980). One asserting that the public has acquired a right to use an area as a public street has the burden of establishing these elements. *Karb v. Bellingham,* 61 Wn.2d 214, 218–19, 377 P.2d

---

[1] "18.08.070 Dedication. 'Dedication' means the deliberate appropriation of land by an owner for any general and public uses, reserving to himself no other rights than such as are compatible with the full exercise and enjoyment of the public uses to which the property has been devoted. The intention to dedicate shall be evidenced by the owner by the presentment for filing of a final plat or short plat showing the dedication thereof; and, the acceptance by the public shall be evidenced by the approval of such plat for filing by the board of county commissioners of the county. (Ord. 31378 (Vol. 28, page 222) § 1.03(6), 1978)."

984 (1963). The record reveals no evidence of Riches' intent to dedicate the road or acceptance by the public; therefore, the court did not err in declaring there was no implied dedication of the road for public use.

The Lays next contend the court erred when it determined respondents hold fee title to the road. The Lays point out the property boundaries of the road do not enter onto respondents' lots, the documents conveying the lots do not mention the road, and the deed only gives an easement to the respondents. Furthermore, the Riches maintained title and paid taxes on the road, retaining the fee until it was conveyed to the Lays by quitclaim deed.

The question of fee ownership in a private road is one of first impression in Washington. However, our courts and Legislature have dealt with the analogous question of fee ownership in public roads. The dedicator, as the original owner of the land, or his successor possesses the fee in both the street and the abutting lot. Upon vacation of the road, he can treat these two estates as separate and distinct parcels of land, *Hagen v. Bolcom Mills,* 74 Wash. 462, 471, 133 P. 1000, 134 P. 1051 (1913); however, unless the dedicator reserves the fee, a conveyance of land abutting upon a public highway carries with it the fee to the center of the highway. *Bradley v. Spokane & I.E. R.R.,* 79 Wash. 455, 140 P. 688 (1914); *Adams v. Skagit Cy.,* 18 Wn. App. 146, 566 P.2d 982 (1977), *review denied,* 90 Wn.2d 1007 (1978); RCW 35.79.040, 58.11.030.

*Hagen* noted that if the original owner of the land abutting the street still owns the land upon vacation of the street, then he may transfer the whole tract or any part of it. What had been a street would be mere land with exactly the same status as any other land which had not been impressed with a public easement. *Hagen v. Bolcom Mills, supra* at 468–69 (quoting *White v. Jefferson,* 110 Minn. 276, 124 N.W. 373, 125 N.W. 262 (1910)). In *Hagen,* the owner of land abutting on both sides of a street that was later vacated determined the future status of the street when he conveyed the street as a distinct parcel. The court

held subsequent conveyances of the abutting lots did not include the fee to the middle of the former street, noting:

"That land is never appurtenant to land;" . . . a fee may carry an easement or a lesser estate as an incident or an accretion, but the conveyance of the fee simple title to one piece of land will not carry as an incident or an accretion a fee of equal or greater degree and quality.

*Hagen v. Bolcom Mills, supra* at 470 (quoting *White v. Jefferson, supra*).

██ We see no reason to treat fee ownership in public and private roads differently. We join the majority of jurisdictions in holding the better rule is that if there is nothing in the deed or surrounding circumstances to show a contrary intention, a conveyance of land bounded by a private road carries title to the center of the road. *Accord, In re Buchanan,* 6 Ill. App. 3d 694, 286 N.E.2d 580 (1972); *State Roads Comm'n v. Teets,* 210 Md. 213, 123 A.2d 309 (1956); *Brassard v. Flynn,* 352 Mass. 185, 224 N.E.2d 221 (1967); *Sawtelle v. Tatone,* 105 N.H. 398, 201 A.2d 111 (1964); *Walker v. Tanner,* 38 Tenn. App. 437, 275 S.W.2d 958 (1954); *MacCorkle v. Charleston,* 105 W. Va. 395, 142 S.E. 841, 58 A.L.R. 231 (1928); 6 G. Thompson, *Real Property* § 3068, at 673–74 (1962); 11 C.J.S. *Boundaries* § 43, at 593 (1938).

*MacCorkle,* at page 401, explains the reason for the rule:

The seller of land can ordinarily have no object in retaining a narrow strip along a line of his grant, particularly a strip subject to the rights of others. The strip is of no value when separated from adjoining property. The grantor's use of and concern for it ends with his conveyance, unless some fortuitous circumstance later makes it worth while. The retention of the strip may seriously retard the improvement and further alienation of the adjoining property, especially if the strip is on a private way. Its proximity to his purchase makes the strip of direct and substantial value to the grantee.

In order to rebut this presumption, the intention of the grantor to retain the strip should be clearly shown. 11 C.J.S. *Boundaries* § 104, at 696 (1938). The evidence here

does not rebut this presumption. In neither their individual nor corporate capacity did the Riches reserve the fee in the road when they conveyed the lots to respondents. Evidence the Riches paid taxes on 5.8 acres of roadway for 3 years was not part of the trial record and, therefore, cannot be considered on appeal. *State v. Wilson,* 75 Wn.2d 329, 450 P.2d 971 (1969). A quitclaim deed conveys only whatever title the grantor had in the land. *Muscatel v. Storey,* 56 Wn.2d 635, 354 P.2d 931 (1960). Consequently, the Riches did not pass any interest in the road to the Lays by the quitclaim deed.

■ The Lays last contend the easement granted in the deed was not exclusive to the respondents. In construing the deed, the obvious intent of the parties controls and all conditions, as well as the acts of the parties in pursuance of the deed, are properly considered. 26 C.J.S. *Deeds* § 147, at 1045 (1956). When considering the deed as a whole, the court did not err in declaring the easement to be an exclusive one. The deed provided that "lots 1 through 9 inclusive" and "[a]ll roadways as set forth in said plat" were subject to the deed. Membership in the homeowners association included the owners of any of the nine lots in the addition. The purpose of the association was "maintaining the roadways serving the afore described [*sic*] lots". Finally, each owner of a lot granted a right of access to "all other members of the Association for such members full . . . use of . . . the roadways, as set forth in the plat". We find no error.

Affirmed.

McINTURFF, A.C.J., and THOMPSON, J., concur.