[Nos. 51136–5, 51196–9.   En Banc.   March 27, 1986.]

THE ROEDER COMPANY, *Respondent,* v. BURLINGTON NORTHERN, INC., *Defendant,* CLARENCE HARPER, ET AL, *Appellants.*

THE ROEDER COMPANY, *Respondent,* v. HOWARD BURTON PORTER, ET AL, *Appellants.*

*Raymond L. Davis,* for appellants Harper, et al.

*Robert Burks* and *Sam Peach,* for appellants Porter, et al.

*Davis, Wright, Todd, Riese & Jones* and *Douglas C. Ross,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether title to abandoned railroad rights of way in the Bellingham area should be quieted in the successor of the original grantor of the rights of way or in the owners of the property abutting the rights of way.

This case concerns two of the seven lawsuits brought by the Roeder Company to quiet title to abandoned railroad rights of way.[1] These suits involved seven separate deeds by a common grantor, Bellingham Bay Improvement Company (the Improvement Company) to various railroads between 1890 and 1914. We granted direct review of two of the seven cases, referred to herein as Porter and Harper, and consolidated them on appeal. The conveyances at issue in each case are described below.

## THE PORTER CASE

The Porter appellants claim ownership of a 50–foot right of way based on a series of conveyances beginning in 1914.

---

[1] A companion case is *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 269, 714 P.2d 303 (1986).

In a deed recorded on September 4, 1914, the Improvement Company by statutory warranty deed conveyed a 50–foot–wide strip of property to the Bellingham and Northern Railway (Bellingham Northern). The granting clause of the deed states that the Improvement Company, in consideration of ten dollars, "conveys and warrants unto Bellingham and Northern Railway Company . . . for all railroad and other right of way purposes, certain tracts and parcels of land situate in the City of Bellingham . . ." The deed proceeds to describe parcel (a) (title to which is not at issue here) and parcel (b), which is the railroad right of way in dispute.

Bellingham Northern subsequently conveyed its interest in the right of way to the Chicago, Milwaukee, St. Paul & Pacific Railroad (the Milwaukee Road). The Milwaukee Road ceased operations over this property sometime before January 1, 1976, and conveyed portions of the right of way by separate *quitclaim* deeds to appellants Porter, Davidson, Brandt and Bellingham Cold Storage Development Company (hereinafter collectively referred to as Porter).

In addition to the quitclaim deeds, Porter owns fee title to property adjoining the abandoned right of way which was acquired from the Improvement Company or its successors. The deeds conveying these adjoining parcels either contain metes and bounds descriptions of the land conveyed or mention the railroad right of way as a boundary. Porter claims title to the right of way both by virtue of the quitclaim deeds and its abutting landowner status.

Roeder's claim to the abandoned right of way arises from a series of conveyances made in connection with the Improvement Company's dissolution. These conveyances were made beginning on December 18, 1933, when the Improvement Company granted to Bellingham Securities Syndicate, Inc. (Bellingham Securities) certain land located in Whatcom County. The deed describes a number of parcels of land with specificity, then adds:

> together with any and all other real property of every kind and nature and wheresoever situate, in which the

first party has at this time or may hereafter acquire any interest.

Roeder argues that this "catchall" clause conveyed the railroad right of way to its predecessor, Bellingham Securities. Subsequent deeds with similar clauses then conveyed Bellingham Securities' interest in the right of way to Roeder.

Roeder filed a quiet title action against Porter on January 20, 1984. Following a bench trial, the trial court held that the 1914 deed from the Improvement Company to Bellingham Northern conveyed an easement, not a fee, and that the Improvement Company thus retained a fee simple interest in the right of way property. The trial court also held that Roeder succeeded to the Improvement Company's fee interest through the catchall clauses which were adequate to convey the fee in the right of way from the Improvement Company to Bellingham Securities and on to Roeder. Finally, the trial court concluded that Porter's ownership of property adjoining the right of way gave it no interest in the abandoned right of way. The court then quieted title to the 50–foot right of way in Roeder.

## The Harper Case

On October 1, 1899, the Improvement Company conveyed to the Bellingham Bay & British Columbia Railroad (the B. C. Railroad) a railroad easement over a 30–foot–wide strip of land in Bellingham. Roeder claims title to this right of way through the same chain of title related above.

Appellants Harper and Davis claim an interest in the right of way based on their ownership of abutting property. Harper's predecessor obtained land abutting the right of way by a 1904 deed that described the Harper property as "lying Southeast of the right–of–way of the Bellingham Bay and Eastern Railroad Company . . . [and] being bounded . . . by the Southeast line of the right–of–way of the Bellingham Bay and Eastern Railroad Company . . ." The Davises' claim is based solely on their ownership of abutting property. Neither the location of the Davises' property nor the deeds through which they acquired their property

are included in the record before us.

Roeder filed suit against the appellants Harper and Davis on October 4, 1983. The trial court ruled that neither Harper nor Davis acquired any interest in the right of way by virtue of their status as adjoining property owners and quieted title to the 30–foot right of way in Roeder.

This appeal presents three issues.

## ISSUES

ISSUE ONE. Did the Improvement Company convey an easement or fee simple title to Bellingham Northern?

ISSUE TWO. Is a "catchall" description of a grantor's land in a deed legally sufficient to convey title to that land?

ISSUE THREE. Do abutting property owners become owners to the center line of a railroad right of way when the right of way is abandoned?

## DECISION

ISSUE ONE.

CONCLUSION. Since the granting clause of the Improvement Company's deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement, not a fee.

The conveyance of a right of way to a railroad may be in fee simple or only an easement.[2] Where only an easement for a right of way is concerned, and its use for such purpose ceases, the land is discharged of the burden of the easement and the right to possession reverts to the original landowner or to that landowner's successors in interest; the right to possession does not go to grantees and successors in interest of the railroad company.[3]

The interpretation of a right of way deed is a mixed

---

[2]*Veach v. Culp,* 92 Wn.2d 570, 573, 599 P.2d 526 (1979); *Morsbach v. Thurston Cy.,* 152 Wash. 562, 568, 278 P. 686 (1929).

[3]*Scott v. Wallitner,* 49 Wn.2d 161, 162–63, 299 P.2d 204 (1956); 65 Am. Jur. 2d *Railroads* § 85, at 394 (1972).

question of fact and law.[4] Determining the parties' intent is a factual question and the courts must look to the entire document in order to ascertain such intent.[5]

In *Veach v. Culp,* 92 Wn.2d 570, 599 P.2d 526 (1979), the granting and habendum clauses of the deed contained absolute grants of land to the railroad. There, the parties had described the land being conveyed as "a right–of–way 100 feet wide, being 50 feet on each side of the center line of the railroad."[6] The court observed that "[l]anguage like this has been found to create an easement, not a fee simple estate."[7] The court then referred to the following rule from *Morsbach v. Thurston Cy.,* 152 Wash. 562, 278 P. 686 (1929), as clarified in *Swan v. O'Leary,* 37 Wn.2d 533, 537, 225 P.2d 199 (1950):

> [I]t is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.

*Veach,* at 574.

The deed in the Porter case likewise stated in its granting clause that the Improvement Company conveyed to Bellingham Northern "for all railroad and other right–of–way purposes", a parcel of land 50 feet wide. Under the rule enunciated in *Morsbach, Swan* and *Veach,* and absent persuasive evidence of intent to the contrary, it thus appears that the 50–foot strip was an easement.[8]

---

[4]*Veach,* at 573; *see Morsbach,* at 571.

[5]*Veach; see Morsbach,* at 567.

[6]*Veach,* at 574.

[7]*Veach,* at 574.

[8]For similar rules with similar results, see *City Motel, Inc. v. State ex rel. State Dep't of Hwys.,* 75 Nev. 137, 336 P.2d 375, 337 P.2d 273 (1959); *Daugherty v. Helena & N.W. Ry.,* 221 Ark. 101, 252 S.W.2d 546 (1952); *State ex rel. State Hwy. Comm'n v. Griffith,* 342 Mo. 229, 114 S.W.2d 976, 132 A.L.R. 151 (1938);

Porter maintains, however, that if the entire deed is examined as *Veach* requires, the conveyance of a fee is evident.

Examining the entire deed, we note that while it contains no habendum clause, its final paragraph reserves to the grantor the right to use the land being conveyed in certain designated ways so long as such uses do not interfere with the railroad. In the early case of *Reichenbach v. Washington Short Line Ry.*, 10 Wash. 357, 360, 38 P. 1126 (1894), this court held that a deed with similar provisions conveyed an easement only. The deed in *Reichenbach* conveyed a right of way to be used for a railroad and stated that the right of way was not to be fenced and that the grantors retained the right to cross and recross it at will. These provisions were found to be inconsistent with the intention to grant a fee and consistent with the grant of only an easement for a particular purpose.

In its 1914 deed to Bellingham Northern, the Improvement Company reserved to itself the right to extend streets over the land being conveyed as well as the right to construct public utilities along these streets, "the same not to be unnecessarily obstructed by the grantee in the operation of its trains over its railroad." The clause then added that these reservations were to be exercised so as not to interfere "in any manner whatsoever with the construction, reconstruction, operation, maintenance, or repair, of any line or lines of railroad, or appurtenances, at any time or times placed upon the lands herein conveyed . . ." The particular purpose for which the land was being conveyed was thus emphasized throughout the deed. As in *Reichenbach,* the grantor's reservations are inconsistent with an intent to grant a fee.

Porter goes outside the language of the deed to further argue that extrinsic evidence proves that the Improvement Company conveyed a fee simple title to the railroad. Porter

---

*Johnson v. Ocean Shore R.R.*, 16 Cal. App. 3d 429, 94 Cal. Rptr. 68 (1971); *Glendora v. Faus,* 148 Cal. App. 2d 920, 307 P.2d 976 (1957).

points to the Improvement Company's inclusion of the 50–foot strip in its 1913 property inventory and to the exclusion of that strip in its 1914 inventory to show that the Improvement Company intended to convey a fee to Bellingham Northern. Under the trial court's findings, this extrinsic evidence is ambiguous at best.[9] We conclude that it is insufficient to overcome the presumption arising from the language of the deed that the deed conveyed no more than an easement in the 50–foot strip.

Clearly, based on the language of the deed, the Improvement Company conveyed an easement only, and not a fee simple interest, to Porter's predecessor in interest, Bellingham Northern.

Issue Two.

Conclusion. A deed that describes the property being conveyed as all of the grantor's property in a particular locality is not invalid.

Catchall clauses (sometimes referred to as "Mother Hubbard" descriptions) purporting to convey all of a grantor's land in a given area have been repeatedly upheld.[10] When a person quitclaims all property owned by that person in a certain locality, he or she thereby transfers all property in that locality to which record title is held at the time of the conveyance.[11]

We do not perceive that upholding the validity of a catchall clause conflicts with our cases holding that land

---

[9]See Porter finding of fact 27 which states that "[i]t is unknown whether [the Improvement Company] would keep in its inventory, or remove therefrom, parcels of property over which it had granted a right of way easement to a railroad. The identity, and position and responsibilities of the person(s) responsible for keeping the inventory also are unknown."

[10]6 G. Thompson, *Real Property* § 3023 (1962 repl.). *See also Cunningham v. Norwegian Lutheran Church of Am.*, 28 Wn.2d 953, 959–62, 184 P.2d 834 (1947); 4 H. Tiffany, *Real Property* § 997, at 230 (3d ed. 1975); Annot., *Sufficiency and Construction of Description in Deed or Mortgage as "All" of Grantor's Property, or "All" of His Property in Certain Locality*, 55 A.L.R. 162, 163 (1928); 26 C.J.S. *Deeds* § 30(b), at 649 (1956).

[11]*Cunningham*, at 958–59.

must be properly and clearly identified in a deed before the deed is valid as a conveyance.[12] When land is insufficiently described in a deed, no other records can assist in determining the property transferred.[13] A catchall clause, by contrast, conveys all of a grantor's property. Resort to real estate records in the vicinity involved can thus identify with certainty the property being transferred.[14]

We affirm the trial court's conclusion that the catchall clauses in the deeds from the Improvement Company to Bellingham Securities, and thence from Bellingham Securities' successors to Roeder, effectively conveyed title in the right of way land to Roeder.

ISSUE THREE.

CONCLUSION. When metes and bounds provisions in a deed describe property that extends up to, but does not include, a railroad right of way, the presumption that abutting property owners take title to the center of the right of way is rebutted.

By statute, upon abandonment of a public street or alley, title vests in the adjoining landowners.[15] Similarly, at common law, the conveyance of land bounded by or along a highway carries title to the center of the highway unless there is something in the deed or surrounding circumstances showing an intent to the contrary.[16] This rule is based on a presumption that the grantor intended to convey such fee along with and as a part of the conveyance of the abutting land, generally on the theory that the grantor

---

[12]*See Barth v. Barth,* 19 Wn.2d 543, 556, 143 P.2d 542 (1943); *Bigelow v. Mood,* 56 Wn.2d 340, 341, 353 P.2d 429 (1960).

[13]*See Marshall v. Hillman Inv. Co.,* 151 Wash. 529, 532–33, 276 P. 564 (1929); *Hartigan v. Hoffman,* 16 Wash. 34, 38, 47 P. 217 (1896).

[14]*See Cunningham,* at 958–59.

[15]RCW 35.79.040.

[16]*McConiga v. Riches,* 40 Wn. App. 532, 538, 700 P.2d 331 (1985); G. Thompson, § 3068, at 666.

did not intend to retain a narrow strip of land which could be of use only to the owner of the adjoining land.[17] The rule is also intended to lessen litigation caused by the existence of narrow strips of land distinct in ownership from the adjoining property.[18]

This "highway presumption" has been extended to private streets and nonnavigable rivers in Washington.[19] A call in a deed to a nonnavigable river carries with it title to the center of the river.[20]

We believe it appropriate that the "highway presumption" likewise apply to railroad rights of way, as has been held in most other jurisdictions which have considered the question.[21] Generally then, the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear.[22]

A major concern in examining conveyances of abutting land is, of course, to determine the intent of the parties to the deed.[23] When the deed refers to the grantor's right of way as a boundary without clearly indicating that the side

---

[17]*Standard Oil Co. v. Milner,* 275 Ala. 104, 110, 152 So. 2d 431 (1962); *see also McConiga,* at 539.

[18]*Cuneo v. Champlin Ref. Co.,* 178 Okla. 198, 202, 62 P.2d 82 (1936); *Vaughn v. Fitzgerald,* 511 P.2d 1148, 1151 (Okla. Ct. App. 1973).

[19]*McConiga,* at 539; *Knutson v. Reichel,* 10 Wn. App. 293, 518 P.2d 233 (1973).

[20]*Knutson,* at 295.

[21]*Cuneo,* at 202; Annot., *Boundary Under Conveyance of Land Bordering on Railroad Right of Way,* 85 A.L.R. 404 (1933).

[22]11 C.J.S. *Boundaries* § 45, at 594 (1938); *Standard Oil Co.,* at 110; *Vaughn,* at 1151.

[23]*See Millyard v. Faus,* 268 Cal. App. 2d 76, 85, 73 Cal. Rptr. 697 (1968); G. Thompson, § 3068, at 677.

of the right of way is the boundary, it is presumed that the grantor intended to convey title to the center of the right of way.[24] When, however, a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property, the presumption of abutting landowners taking to the center of the right of way is rebutted.[25] A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way,[26] and such a description rebuts the presumption that the grantee takes title to the center of the right of way.

All of the appellants herein, with the exception of the Davises, obtained their abutting property from the Improvement Company or its successors. As discussed previously, the Improvement Company retained fee title to the two rights of way at issue and then effectively conveyed that title to its successors. With one exception,[27] the deeds with which these grantors conveyed abutting property used metes and bounds to describe that property as extending up to the rights of way. A typical example is one of the descriptions of the abutting property conveyed:

> Beginning at a point on the North line of Oregon Street Two Hundred Seventy (270) Feet East of its point of intersection with the East line of Orleans Street; thence North Three Hundred Fifty–three (353) feet to the South line of the Railroad Right–of–Way of the Chicago, Milwaukee, St. Paul and Pacific Railway; thence Easterly along said Right–of–Way South line One Hun-

---

[24]*Faus v. Nelson*, 241 Cal. App. 2d 320, 323–24, 50 Cal. Rptr. 483 (1966); G. Thompson, § 3068, at 671.

[25]*Millyard*, at 84; *Standard Oil Co.*, at 110; G. Thompson, § 3068, at 675–76.

[26]*Millyard*, at 84; *Redlands v. Nickerson*, 188 Cal. App. 2d 118, 126, 10 Cal. Rptr. 431 (1961).

[27]That exception describes the abutting property as "lying Northerly of the right–of–way". While not in metes and bounds terms, under the facts herein such a description appears to exclude any interest in the right of way. *See* 85 A.L.R. at 409.

dred Sixty and Thirty–Six Hundredths (160.36) Feet; thence South Three Hundred Sixty–three and Seventy–eight [Hundredths] (363.78) Feet to the North line of Oregon Street; thence West along said North line One Hundred Sixty (160) Feet to the point of beginning.[28]

A boundary falling in the center of the rights of way is inconsistent with the careful metes and bounds descriptions in these deeds.[29]

As noted earlier, the Davises presented no evidence pertaining to their acquisition of adjoining property. The presumption that the grantor intended to convey title to the center of the right of way is inapplicable where the adjoining landowner presents no evidence of having received his or her property from the owner of the right of way. A property owner receives no interest in a railroad right of way simply through ownership of abutting land.[30] We agree that

> to say that a person acquiring title to an abutting lot thereby acquires a fee in the [right of way], even though his grantor could not have conveyed such fee, would have the effect of taking property from one owner and giving it to another.

*Standard Oil Co. v. Milner,* 275 Ala. 104, 112, 152 So. 2d 431 (1962).

Without evidence showing that the owner of abutting property received that property from the fee owner of the right of way property, the railroad presumption is inapplicable. Even in the face of such evidence, other persuasive evidence of the grantor's intent to retain the right of way can rebut the presumption. Specifically, language in a deed that describes the adjoining property as extending up to the edge of the right of way rebuts the presumption that the grantor intended to convey title to the center of the

---

[28]The Brandt deed (Brandt is one of the parties in the Porter suit).

[29]*See Millyard,* at 84–85.

[30]*See Standard Oil Co.,* at 112–13; *see also Hagen v. Bolcom Mills,* 74 Wash. 462, 470, 133 P. 1000, 134 P. 1051 (1913).

right of way.

The trial court did not err in quieting title to the two rights of way in Roeder.

Affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied May 27, 1986.