IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROYAL COACHMAN HOMEOWNERS, | ) | |
| COOPERATIVE, a Washington | ) | No. 39525-1-III |
| Corporation, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHANNON HUNTER BURNS and | ) | |
| BRIAN J. MARTLIN, a married couple, | ) | |
| ALL OTHER OCCUPANTS AT 133 | ) | |
| CATALPA AVE, N.E. #3, #4, and #5, | ) | |
| | ) | |
| Appellants. | | |

FEARING, J. — Royal Coachman Homeowners Cooperative brings suit to eject Shannon Burns and Brian Martlin and their mobile home from a mobile home park. Burns' family previously owned the park. After Royal Coachman purchased the mobile home park, Royal Coachmen demanded that Burns and Martlin pay rent to it and sign an occupancy agreement. Until months after Royal Coachman filed suit, Burns and Martlin declined to voluntarily admit a landlord-tenant relationship and denied any obligations to Royal Coachman. We affirm the superior court's grant of summary judgment in favor of Royal Coachman and an order of ejectment.

FACTS

Appellants Shannon Burns and Brian Martlin, wife and husband, resided in a Royal City mobile home park owned by respondent Royal Coachman Homeowners Cooperative (Royal Coachman). Burns' late grandfather, Richard Turner, formed the mobile home park in 1981. In 1993, he quitclaimed the property to Burns' mother, Darla May Turner, who incorporated the property as Royal Coachman Mobile Home Park, LLC (LLC or the limited liability company). Burns first lived within the mobile home park with her grandfather on lot 30, then with her mother on property encompassing lots 3, 4, and 5. After her mother's death in 2014, Burns continued to occupy a mobile home on lot 4 and also continued to use lots 3 and 5. She was the sole beneficiary of her mother's estate.

In 2014, Shannon Burns began operating the mobile home park on behalf of her mother's estate, the Darla May Turner estate. Burns had an unenviable stewardship. Aggrieved tenants sued due to ill treatment. The tenants obtained a consent decree and became creditors of Burns and the LLC. On October 3, 2016, the LLC sought bankruptcy protection under Chapter 11, with Burns signing the petition as "'Personal Representative of the Estate of Darla May Turner, Member of Royal Coachman Mobile Home Park, LLC.'" Clerk's Papers (CP) at 32. On November 19, 2020, the bankruptcy court authorized the bankruptcy trustee to sell the mobile home park to Northwest Cooperative Development Center (NWCDC) for $1.6 million. The tenants formed Royal

2

Coachman Cooperative under 24.06 RCW, and NWCDC assigned its purchaser rights to Royal Coachman.

After the bankruptcy trustee sale to Royal Coachman, management of the mobile home park shifted from Shannon Burns to an accounting firm that employed Thelma Trevino as property coordinator. Burns then occupied lots 3, 4, and 5 as if they were a single dwelling unit. Power, water, and sewer connections were available only to lot 4, on which sat a mobile home. A trailer owned by Burns sat on lot 3. Lots 4 and 5 were enclosed by a cyclone fence that surrounded the mobile home occupied by Burns and an appurtenant yard.

The parties disagree as to whether Royal Coachman offered a rental agreement to Shannon Burns and Brian Martlin. Thelma Trevino, on June 16, 2021, wrote Shannon Burns to inform her that she was the new property manager, that Burns needed to remove tools and personal equipment from the mobile home park office before Royal Coachman changed locks on the office, and Burns needed to enter occupancy agreements for lots 3, 4 and 5. Trevino advised that rent was $475.00 per lot. The letter indicated that Trevino enclosed a copy of an occupancy agreement and community rules. Trevino's declaration did not attach any occupancy agreement or rules to the letter.

Shannon Burns averred in her declaration that, after the bankruptcy court approved the sale of the mobile home park, she telephoned the mobile home park manager and asked for a rental agreement so that she could become a member of the homeowners

association and continue to live at lot 4. According to Burns, the manager failed to send a rental agreement. Burns avers that she asked the manager a second time for a rental agreement, and the manager failed again to send an agreement.

On June 18, 2021, two days after Thelma Trevino's letter to Shannon Burns, Burns' attorney responded by letter to Trevino. The responding letter read in part:

> There seems to be some confusion regarding the office building you refer to and the rental charges for the units you described. Please contact me to discuss the matter before you take any action to change the locks on the building as Ms. Burns has a legal right to occupancy at this time and I find nothing in the file to indicate that she can be excluded from the property at this time.

CP at 242. Presumably Shannon Burns believed she or the estate of her mother continued to own the office building. The letter did not explain the confusion about rent. The letter did not suggest that Thelma Trevino had failed to include an occupancy agreement or community rules in her June 16 letter. Nor did the letter indicate that Burns wished to sign an occupancy agreement of any of lots 3, 4 or 5.

On June 22, 2021, Thelma Trevino replied to Shannon Burns' counsel that NWCDC purchased the office building when purchasing the mobile home park. Trevino wrote about the mobile homes and lots:

> It is our understanding that the Estate of Darla Turner is the rightful owner of the mobile homes located in lots 4 and 30 as well as the recreational trailer located in lot 3. As the owner of those homes, it is the responsibility of the Estate to make monthly lot rent payments ($475 per lot) and execute a non-member occupancy agreement (i.e. lease) regardless

4

> of occupancy in the homes. These payments and completed agreements
> can be sent directly to the Royal Coachman Homeowners Cooperative.

CP at 244. The letter read that it enclosed another copy of the nonmember occupancy

agreement and of the community rules. The June 22 letter informed Burns that Royal

Coachman intended to reestablish lot 5 as a usable rental space.

Shannon Burns never signed an occupancy agreement. She paid no rent.

In July, August, September, and October 2012, Royal Coachman billed the estate

of Darla Turner for rent on lot 5. In November 2021, Royal Coachman billed the estate

for rent on lot 3. Royal Coachman sent one of the invoices to Shannon Burns, as the

executive of the estate, at her Tacoma address. Royal Coachman sent the rest of the

invoices to the estate through the care of the estate's and Burns' attorney. Thelma

Trevino believes that, after the transfer of ownership, Burns and Brian Martlin moved to

Tacoma, although they continued to own and claim to occupy the mobile home on lot 4.

On November 23, 2021, Shannon Burns' attorney wrote to Thelma Trevino at

Royal Coachman:

> Our office is in receipt of eight invoices from the Royal Coachman
> Homeowners Cooperative for occupancy of mobile home lots 3, 4 and 5
> (enclosed). These invoices are addressed to the Estate of Darla Turner. If
> these invoices are intended to be claims against the Estate of Darla Turner,
> they are hereby rejected.

CP at 246.

On February 24, 2022, Royal Coachman served Shannon Burns and Brian Martlin with a three-day notice to vacate. On March 2, 2022, Burns filed a complaint with the Washington State Attorney General under the Manufactured Housing Dispute Resolution Program. Burns alleged Royal Coachman discriminated and retaliated against her.

PROCEDURE

On April 18, 2022, Royal Coachman filed suit against Shannon Burns and Brian Martlin for ejectment of Burns and Martlin from lots 3, 4, and 5. Royal Coachman also sought damages for waste and nuisance. Royal Coachman alleged that Burns and Martlin never reached an agreement to rent the lots in the mobile home park. In reply, Burns and Martlin claimed that Royal Coachman would not let them join the cooperative even though they met the membership qualifications. Burns and Martlin also maintained that Royal Coachman had always treated them as tenants and that they maintained a right of possession to the three lots.

On October 12, 2022, Royal Coachman moved for summary judgment. On October 26, 2022, Royal Coachman sent a separate billing statement to the Estate of Darla Turner for each of lots 3, 4, and 5 for rent owed. The statements for each lot claimed that rent was owed of $7,932.49 for the respective lots.

On December 1, 2022, while the summary judgment motion was pending, Shannon Burns' attorney wrote to Royal Coachman's counsel:

> My client . . . will sell her mobile home at lot #4 for $50,000 cash. This offer is open until close of business Friday, 5 pm.
>
> Alternatively, please find my trust account check payable to the Plaintiffs in the amount of $8,986.92. This is intended to cover the rent due pursuant to Ms. Trevino's invoice through October 2022 on lot 4. Lot 5 is not a rentable lot and now [sic] rent is due on it. The amount also includes interest at the legal rate to date, $250 for statutory attorney fees and an additional $150 for costs. If the costs are more than that let me know and I will provide you with another check for the difference. My client will sign a rental agreement immediately and comply with all requirements under the lease. She will then proceed to litigate her rights under the Manufactured Mobile Home Landlord Tenant Act. If the check is not in the correct amount let me know right away and I will provide additional funds. This check is tendered pursuant to RCW 7.28.250.

CP at 360.

The following day, on December 2, 2022, the superior court entered an order granting summary judgment on Royal Coachman's ejectment cause of action. CP 273-274. The superior court thereafter denied Shannon Burns and Brian Martlin's motion for reconsideration.

On February 3, 2023, the superior court entered a judgment and order for writ of restitution restoring the mobile home lots to Royal Coachman. Royal Coachman dismissed causes of action for waste and nuisance. Also on February 3, 2023, Shannon Burns and Brian Martlin filed a motion to stay execution of the writ of restitution. They cited both RCW 7.28.250 and RAP 8.1. They agreed to the superior court requiring a supersedeas bond in order to stay execution.

In support of the motion to stay execution, Shannon Burns' counsel filed a declaration averring that Burns and Brian Martlin had tendered the full amount of the rent owed and promised to pay monthly rent thereafter. The declaration attached counsel's December 1, 2022 letter. This letter tendered rent for lot 4, but no rent for lots 3 or 5. Counsel's declaration mentioned that Royal Coachman had "rejected the rental amount to date." CP at 356. The declaration did not disclose whether Royal Coachman disputed whether the $8,986.92 on December was the correct amount owed or if Royal Coachman simply refused to negotiate the check sent.

On February 17, 2023, the superior court entered an order staying the enforcement of the writ of restitution on the payment by Shannon Burns and Brian Martlin of a bond in the sum of $22,950. The record does not show that Burns and Martlin posted a bond in such amount.

## LAW AND ANALYSIS

Royal Coachman brings action for ejectment under RCW 7.28.250. Although Royal Coachman sent an invoice to Shannon Burns and Brian Martlin that listed rent owed, Royal Coachman did not serve any formal notice to pay or vacate on the two. Royal Coachman's notice only demanded that Burns and Martlin vacate the premises within three days. Royal Coachman does not seek eviction under the Manufacture/Mobile Home Landlord Tenant Act (MHLTA) ch. 59.20 RCW for failure to pay rent.

8

On appeal, Shannon Burns and Brian Martlin seek reversal of the order on summary judgment directing that a writ of restitution issue in favor of Royal Coachman. Burns and Martlin contend they raised an issue of fact as to whether they assumed the status of tenants under the MHLTA. Because they raised an issue of fact, they contend Royal Coachman needed to and failed to follow steps required under the MHLTA before a landlord may evict a tenant. Next, Burns and Martlin argue that Royal Coachman needed to serve a fourteen-day notice to vacate, rather than a three-day notice. Burns and Martlin also maintain that the superior court erred in failing to stay the writ of restitution and erred when failing to defer to the dispute resolution process available for mobile home park tenants by the Washington State Attorney General. We reject all of Burns and Martlin's assignments of error primarily because the parties never entered a landlord-tenant relationship.

Tenant Status

The MHLTA governs rental agreements between mobile home lot tenants and park landlords when the tenant owns his or her occupied mobile home. The Washington legislature adopted the MHLTA, in 1977, to give heightened protection to mobile home tenants beyond those protections afforded tenants of other housing. *McGahuey v. Hwang*, 104 Wn. App. 176, 182, 15 P.3d 672 (2001). A reason for this added protection arises from a tenant incurring a substantial expense of moving the home if evicted.

9

We must decide whether the MHLTA applies to the relationship between Royal Coachman, as landlord, and Shannon Burns and Brian Martlin, as tenants. RCW 59.20.040 declares in pertinent part:

> This chapter shall regulate and determine legal rights, remedies, and obligations *arising from any rental agreement between a landlord and a tenant* regarding a mobile home lot and including specified amenities within the mobile home park, mobile home park cooperative, or mobile home park subdivision, where the tenant has no ownership interest in the property or in the association which owns the property, whose uses are referred to as a part of the rent structure paid by the tenant.

(Emphasis added.) When arguing that the MHLTA does not control its relationship with Burns and Martlin, Royal Coachman does not rely on RCW 59.20.040's mention of a "rental agreement." Instead, Royal Coachman argues that the husband and wife were not "tenants" within the meaning of RCW 59.20.040.

If Shannon Burns and Brian Martlin became tenants under the MHLTA, they enjoyed protections afforded under the MHLTA that Royal Coachman violated. If not, they were tenants-at-will and Royal Coachman could terminate their tenancy by simply demanding possession. *Najewitz v. City of Seattle*, 21 Wn.2d 656, 659, 152 P.2d 722 (1944). After the demand, Burns and Martlin only possessed a reasonable time in which to vacate before Royal Coachman could seek ejectment. *Najewitz v. City of Seattle*, 21 Wn.2d 656, 659 (1944).

On appeal, Shannon Burns and Brian Martlin contend a question of fact exists as to whether they were tenants of Royal Coachman. Burns and Martlin underscore that

10

Burns testified that she asked for and never received a proposed occupancy agreement. Relatedly, Burns and Martlin highlight that Royal Coachman failed to produce, in support of its summary judgment motion, any occupancy agreement that Thelma Trevino allegedly sent to Burns. In response, Royal Coachman argues that it never entered a landlord-tenant relationship with Burns and Martlin because the two never signed an occupancy agreement. Royal Coachman also urges that Burns and Martlin never paid rent or agreed to pay rent, a prerequisite for being a tenant.

Under the MHLTA, a "tenant" is defined as "any person, except a transient, who *rents* a mobile home lot." RCW 59.20.030(27) (emphasis added). The statute does not define the verb "rents." In construing a statute, this court discerns the plain meaning of nontechnical statutory terms from their dictionary definitions. *State v. Cooper*, 156 Wn.2d 475, 480, 128 P.3d 1234 (2006). The verb "rent" means "to take and hold under an agreement to pay rent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (1993). The noun "rents" means "a piece of property that the owner allows another to use in exchange for a payment in services, kind, or money." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (1993). We deem the meaning of "rent" for purposes of RCW 59.20.040 to be the taking of possession of a lot under an agreement to pay money to the owner of the mobile home park. Thus, Shannon Burns and Brian Martlin were tenants only if they took possession of a mobile home lot under an agreement to pay

money to Royal Coachman. The undisputed facts establish that Burns and Martlin did not take possession of a lot under an agreement to pay money.

The acknowledged evidence shows that Shannon Burns, as the personal representative of the estate of her mother, was the sole owner of the Royal Coachman LLC after her mother died. Thus, Burns and Martlin were initially landlords at the mobile home park. They cannot rely on the period of time that they occupied the park before the purchase of the park by NWCDC. A person who owns the park does not qualify as a tenant under the MHLTA. RCW 59.20.040. Furthermore, Shannon Burns never presented evidence that, before her mother died, Burns occupied a lot under an agreement to pay rent.

To be adjudged a tenant of Royal Coachman Homeowners Cooperative, Shannon Burns and Brian Martlin must have become tenants after the cooperative took possession of the mobile home park. On June 16, 2021, Thelma Trevino sent a letter informing Burns of the monthly rent owed. Instead of tendering any rent, Burns' counsel claimed "confusion" and wrote that Burns maintained "a legal right to occupancy at this time." CP at 242. The letter may have only asserted a right to possess the office building, but Burns and Martlin now assert that the right may have extended to mobile home lots. Regardless, counsel's letter did not suggest that Burns and Martlin were tenants of Royal Coachman, offer to pay rent, or ask to enter a rental agreement. When Royal Coachman sent invoices from June to November 2021, Burns' attorney acknowledged receipt but

rejected the invoices as claims against the estate. Burns and Martlin failed to pay rent

thereafter. Royal Coachman was willing to accept Burns and Martlin as tenants, but the

wife and husband never acknowledged any obligation or agreement to pay Royal

Coachman.

We review a summary judgment order favoring Royal Coachman. Summary

judgment can only be granted when no genuine issue of material fact exists and, as a

matter of law, the moving party is entitled to judgment. *Weyerhauser Co. v. Aetna

Casualty & Surety Co.*, 123 Wn.2d 891, 897, 874 P.2d 142 (1994). A "material fact" is

one that all or part of the outcome of the litigation depends upon. *McConiga v. Riches*,

40 Wn. App. 532, 536, 700 P.2d 331 (1985). The evidence presented for and against a

motion for summary judgment must be viewed in the light most favorable to the

nonmoving party. *Morris v. McNicol*, 83 Wn.2d 491, 495, 519 P.2d 7 (1974). Even

when construing the evidence favorably for Shannon Burns and Brian Martlin, the

evidence indisputably establishes that Burns and Martlin never took possession of a

mobile home lot under an agreement to pay rent.

We now address numerous contentions raised by Shannon Burns and Brian

Martlin. Burns and Martlin claim they contested the amount of rent. They impliedly

argue that, because of a contest, they must have agreed to pay rent, but that the parties

could not concur on the amount to be paid. But they cite to no page in the clerk's papers

to support this assertion of a disputed amount. We also question why Burns and Martlin

13

should not pay the same amount as other tenants. Furthermore, the landlord and tenant may need to initially agree to a stated amount of rent for the landlord-tenant relationship to commence.

Shannon Burns and Brian Martlin next maintain that Royal Coachman acknowledged their status as tenants when Thelma Trevino notified Shannon Burns, on June 16, 2021, of her obligation to pay lot rent of $475 per month for lots 3, 4, and 5. But Burns never accepted her status as a tenant. Her attorney wrote a letter stating that she had the right to occupy the property. The letter did not mention any obligation to pay rent. The letter did not suggest that Burns and Martlin would pay rent. The landlord and tenant relationship is a reciprocal relationship, and Burns and Martlin never agreed to pay rent or acknowledge a desire to rent from Royal Coachman.

Shannon Burns and Brian Martlin argue that, when someone occupies a mobile home in a mobile home park without entering a written lease, an implied tenancy exists under RCW 59.20.050(1). They cite *Gillette v. Zakarison*, 68 Wn. App. 838, 846 P.2d 574 (1993) for this proposition. *Gillette*, however, offers no suggestion that the tenant can assert rights to occupy the property without the need to pay rent. The never tenant failed to pay any rent.

Shannon Burns and Brian Martlin's appeal forms a case unique from Washington reported decisions because of the transfer of ownership to a new landlord, the earlier occupancy of one owning a mobile home, the failure of the occupant to agree to pay rent

to the new owner, and the refusal of the occupant to pay any rent for eight months. Burns and Brian could have paid rent or agreed to pay rent without a written rental agreement. If they had, we would agree that they became tenants.

Shannon Burns and Brian Martlin highlight that Royal Coachman sent the estate of Darla Turner an invoice for rent. But in a November 23, 2021 letter, their attorney denied the claim thereby rejecting that any amount was owed. The letter did not offer to pay a partial amount. The letter did not suggest that Burns and Martlin, not the estate, were the tenants and that Burns and Martlin agreed to pay rent. Burns and Martlin cannot reject the payment of rent for months and then later argue they rented the property.

Shannon Burns and Brian Martlin highlight that the MHLTA imposes a duty on the landlord to submit a rental agreement to the tenant. Under Shannon Burns' testimony, Thelma Trevino never sent Burns an occupancy agreement, although her two letters referenced the enclosure of an agreement. Conversely, according to Burns and Martlin, they need not show they sought to procure an agreement. According to Burns and Martlin, the failure of Royal Coachman to fulfill its obligation to submit an occupancy agreement established a tenancy.

RCW 59.20.050(1), upon which Shannon Burns and Brian Martlin heavily rely, declares:

> No landlord may offer a mobile home lot for rent to anyone without offering a written rental agreement for a term of one year or more. . . . PROVIDED, That if the landlord allows the tenant to move a mobile home,

15

> manufactured home, or park model into a mobile home park without obtaining a written rental agreement for a term of one year or more, or a written waiver of the right to a one-year term or more, the term of the tenancy shall be deemed to be for one year from the date of occupancy of the mobile home lot.

The statute seeks to ensure that a tenant has the opportunity for a one-year lease. *Holiday Resort Community Association v. Echo Lake Associates, LLC*, 134 Wn. App. 210, 223, 135 P.3d 499 (2006). Although the statute demands that the landlord offer a written agreement, the statute imposes no specific duty to deliver a written agreement to the prospective tenant.

RCW 59.20.050(1) does not designate who must produce a proposed occupancy agreement in the event the parties dispute whether the occupant of a lot became a tenant. RCW 59.20.050 does not read that, assuming the landlord fails to forward a written occupancy agreement, the occupant becomes a "tenant" under the MHLTA despite refusing to pay any rent. The statute does not free the occupant from paying rent in order to be a tenant. Most importantly, RCW 59.20.050(1) applies only if the landlord-tenant relationship existed in the first place, a predicate fact missing in this appeal.

Under RCW 59.20.050, an implied rental agreement arises only when the landlord *allows* a tenant to move his or her mobile home into a mobile home park without obtaining a written rental agreement beforehand. Royal Coachman never allowed Shannon Burns to move onto the property. She already resided on the lots when Royal Coachman purchased the mobile home park in bankruptcy proceedings.

16

Shannon Burns and Brian Martlin also rely on RCW 59.20.060, which demands a written rental agreement for a tenant in a mobile home park. In turn, as this court recognized, with respect to RCW 59.20.060(1):

> Where a mobile home space does not have a written rental agreement, the agreement is considered an "implied rental agreement" for a period of one year, renewed automatically for one year. Further, a rental agreement exists where tenants live in a mobile park and provide rent to the landlord while using the mobile park based on rules provided by the landlord.

*TST, LLC v. Manufactured Housing Dispute Resolution Program of Office of Attorney General*, 17 Wn. App. 2d 662, 669-70, 485 P.3d 977 (2021) (citations omitted). This statue helps none because Burns and Martlin never paid rent or used the mobile home park based on rules provided by Royal Coachman.

Shannon Burns and Brian Martlin highlight that Royal Coachman charged them rent for lots 3 and 5, when those lots had never been rented before. Assuming this fact to be relevant, the charge for these additional lots did not render Burns and Martlin tenants for purposes of lot 4 when the two never agreed to pay a fixed rent for any lot.

Although Shannon Burns and Brian Martlin were not tenants under the MHLTA, each was entitled to limited protections as an "occupant" of a mobile home in a mobile home lot. RCW 59.20.030(18). Burns and Martlin insist that Royal Coachman failed to afford them "fourteen days written notice to pay rent and/or other charges or to vacate." RCW 59.20.080(1)(b). While Royal Coachman filed this ejectment action without giving

17

Burns and Martlin fourteen days advance notice to pay or vacate, the MHLTA relives a landlord of this duty when the termination of an occupancy occurs after a "'mobile home park or manufactured housing community is sold to an eligible organization.'" RCW 59.20.080(1)(e)(iii). Royal Coachman is a "'mobile home park cooperative'" pursuant to RCW 59.20.030(13) and, as such, constitutes an eligible organization which "includes community land trusts, resident nonprofit cooperatives, local governments, local housing authorities, nonprofit community or neighborhood-based organizations, federally recognized Indian tribes in the state of Washington, and regional or statewide nonprofit housing assistance organizations[.]" RCW 59.20.030(4). The trial court correctly ruled that the MHLTA did not require the Royal Coachman to provide Burns and Martlin with fourteen days written notice to pay rent or vacate.

Royal Coachman argues that, because Shannon Burns and Brian Martlin had failed to pay any rent, the two could not, based on RCW 59.20.240, rely on protections afforded by the MHLTA. RCW 59.20.240 declares in part:

> The tenant shall be current in the payment of rent including all utilities which the tenant has agreed in the rental agreement to pay before exercising any of the remedies accorded the tenant under the provisions of this chapter.

Since we rule in favor of Royal Coachman on other grounds, we need not address the applicability of RCW 59.20.040.

RCW 7.28.250

Shannon Burns and Brian Martlin contend they possessed the right to litigate possession under RCW 7.28.250. Based on reading their brief as a whole, we rephrase the argument as assigning error to the superior court's failure to stay the writ of restitution while the two pursued their appeal. They argue that they tendered the full amount of rent owed in compliance with the statute. Nevertheless, they omit any mention that they agreed, as part of their motion to stay, that the superior court may require the posting of a supersedeas bond as a condition to a stay or that they failed to post the bond.

RCW 7.28.250 declares:

> [I]f at any time before the judgment in such action, the lessee or his or her successor in interest as to the whole or a part of the property, pay to the plaintiff, or bring into court the amount of rent then in arrear, with interest and cost of action, and perform the other covenants or agreements on the part of the lessee, he or she shall be entitled to continue in the possession according to the terms of the lease.

For numerous reasons, we reject Shannon Burns and Brian Martlin's assignment of error based on the trial court's failure to stay the judgment under RCW 7.28.250. The superior court, at the suggestion of Burns and Martlin, required a $22,950 bond to be posted as a condition of the stay. Burns and Martlin never posted a bond. Burns and Martlin do not assign error to the requirement of the bond or to the amount of the ordered bond. This omission alone demands rejection of the assignment of error.

RCW 7.28.250 allows for a stay only if the tenants pay the rent in arrears. In addition to a dispute as to whether Shannon Burns and Brian Martlin needed to pay rent for lots 3 and 5, Burns and Martlin failed to tender any payment before the superior court entered the writ of restitution in October 2022. Burns' counsel sent a check in November 2022.

Under RCW 7.28.250, the tenants must pay before entry of a judgment. After entering the summary judgment order for issuing a writ on December 2, 2022, the trial court entered a judgment on February 3, 2023. Shannon Burns and Brian Martlin also filed their motion for a stay on February 3. Burns and Martlin fail to establish that they filed their motion before entry of the judgment.

Royal Coachman argues that RCW 7.28.250 does not apply because it did not base its action for ejectment on nonpayment of rent. Because we rule in favor of Royal Coachman on other grounds, we do not address this added argument.

Manufactured Housing Dispute Resolution Program

Before Royal Coachman initiated this eviction action against Shannon Burns and Brian Martlin, Burns and Martlin lodged an administrative complaint with the Attorney General's Manufactured Housing Dispute Resolution Program (MHDRP), ch. 59.30 RCW. Burns and Martlin contend that the superior court should have stayed this lawsuit until the administrative resolution of the complaint.

Royal Coachman moved this court to take judicial notice, under ER 201, that the

Attorney General's Office has dismissed Shannon Burns and Brian Martlin's

administrative complaint. Royal Coachman argues that this information resolves the

question of whether the trial court should have stayed Royal Coachman's case until

resolution of the MHDRP complaint.

Although ER 201(f) allows the court to take judicial notice at any stage of the

proceeding, RAP 9.11 restricts appellate consideration of additional evidence on review.

*King County v. Central Puget Sound Growth Management Hearings Board*, 142 Wn.2d

543, 549 n.6, 14 P.3d 133 (2000). Under RAP 9.11, the court can take additional

evidence on review if:

> (a) . . . (1) additional proof of facts is needed to fairly
> resolve the issues on review, (2) the additional evidence
> would probably change the decision being reviewed, (3) it is
> equitable to excuse a party's failure to present the evidence to
> the trial court, (4) the remedy available to a party through
> postjudgment motions in the trial court is inadequate or
> unnecessarily expensive, (5) the appellate court remedy of
> granting a new trial is inadequate or unnecessarily expensive,
> [or] (6) it would be inequitable to decide the case solely on
> the evidence already taken in the trial court.

The additional proof of facts is unnecessary to resolve this assignment of error and would

not change the decision being reviewed. As none of the other grounds under RAP 9.11

apply, we deny Royal Coachman's motion.

The superior court correctly refused to consider Shannon Burns' rights under chapter 59.30 RCW. As already ruled, Burns was not a tenant under RCW 59.20.030(27) and thus had no protection under the MHLTA. Assuming Burns was a tenant under an implied rental agreement, she would nevertheless be prohibited from exercising any of the MHLTA's remedies by reason of RCW 59.20.240, which reads, "The tenant *shall be current in the payment of rent* including all utilities which the tenant has agreed in the rental agreement to pay before exercising any of the remedies accorded the tenant under the provisions of this chapter." (Emphasis added.). Burns had neither paid nor tendered any payment when she demanded the dispute resolution.

CONCLUSION

We affirm the superior court's grant of a writ of restitution to restore lots 3, 4, and 5 to Royal Coachman.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Staab, A.C.J.                                                      Cooney, J.

22